FILED
2009 May-11 PM 02:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| YOLANDA PAYNE o/b/o M.D.T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:07-CV-2280-LSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Yolanda Payne, on behalf of her minor child, M.D.T. ("Claimant"), appeals the decision of the Administrative Law Judge ("ALJ") denying her application for Child's Supplemental Security Income ("SSI"). Ms. Payne has timely pursued and exhausted her administrative remedies and the decision of the ALJ is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Claimant was ten years old at the time of the ALJ's decision and he was enrolled in the fourth grade.  (Tr. at 19.)  Plaintiff believes that her son

became disabled on September 1, 2002, due to severe attention deficit hyperactive disorder ("ADHD"), combined type and an impulse control disorder. (Doc 6 at 2.)

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act which amended the statutory standard for determining child SSI. *See* P.L. No. 104-193, 110 Stat. 2105. The revised standard states that:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(1). On September 11, 2000, the SSA published the final rules implementing the act. *See* 65 Fed. Reg. 5471. These rules became effective on January 2, 2001. *See id.*

When evaluating the disability of a child, the regulations prescribe a three-step sequential evaluation process. *See* 20 C.F.R. § 416.924(a). The first step requires a determination of whether the child is "doing substantial gainful activity." *Id.* If he or she is, then the child is not disabled and the

evaluation stops. *Id.* If the child is not engaged in substantial gainful activity, the second step requires the ALJ to determine whether he or she suffers from a severe impairment or combination of impairments. *Id*. An impairment is considered "severe" if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the impairments are not severe, the analysis stops. 20 C.F.R. § 416.924(a). However, if the impairments are "severe," the third step requires the ALJ to determine if one or more of the impairments meets or equals an impairment listed in Appendix 1 to Subpart P of Part 404. *Id*. If the child has such an impairment and it meets the durational requirement, the ALJ will find that he or she is disabled. *Id*. If they do not meet each of the criteria enumerated in the listings, the ALJ must decide whether the impairment or combination of impairments "functionally equals" the severity of any listed impairment. *See* 20 C.F.R. § 416.924(d).

When assessing a child's functional limitations, the ALJ considers all of the relevant factors, such as: how well the child can initiate and sustain activities, how much extra help he or she requires, the effects of structures or supportive settings, how the child functions in school, and the effects of

medications or other treatments on the child's health. 20 C.F.R. § 416.926a. To determine functional equivalence, the ALJ must evaluate the child's limitations in the following six functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the ability to care for himself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i-vi). An impairment, or combination of impairments, functionally equals a listed impairment if it results in either "marked" limitations in two of the previously mentioned domains or an "extreme" limitation in one domain.[1]  *See* 20 C.F.R. § 416.926a(a).

Applying this sequential evaluation, the ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 27.) Based on the evidence presented, the ALJ concluded that his ADHD and attention deficit disorder are considered "severe" according to 20 C.F.R. § 416.924(c). *Id.* Nonetheless, the ALJ determined that these

---

[1] For purposes of deciding the overall limitation in the six functional domains, a "marked" limitation is one that "seriously" interferes with functioning, and an "extreme" limitation is one that "very seriously" interferes with functioning. *See* 20 C.F.R. § 416.926a(e)(2) and (3).

impairments, when considered singularly or in combination, did not medically meet or equal the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 31. In evaluating functional equivalence, the ALJ found that Claimant's impairments, when considered in combination, caused "no more than slight problems" in the domains of acquiring and using information, moving about and manipulating objects, and health and physical well-being. *Id*. at 31-32. In the domains of attending to and completing tasks, interacting and relating with others, and caring for himself, the ALJ found Claimant's impairments, when considered in combination, caused a "less than marked limitation." *Id*. The ALJ concluded by finding that "[b]ased on his application protectively filed on October 31, 2003, the claimant is not disabled under Section 1614(a)(3)(C) of the Social Security Act." *Id*. at 33.

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal

standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of the claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622,

624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Plaintiff alleges that the ALJ's decision should be reversed or remanded for three reasons.  (Doc. 6 at 1-7.)  First, Plaintiff argues that the ALJ applied improper legal standards.  *Id*. at 4.  Second, Plaintiff submits that the ALJ erred in "evaluating the severity of [Claimant's] ADHD."  *Id*.  Third, Plaintiff claims the ALJ erred in "failing to fully develop the record by seeking further medical review."  *Id*. at 5.

   A.   Treating/Other Source Opinions.

Plaintiff claims that the "ALJ failed to show good cause why the opinion of the Plaintiff's treating sources, and his mother should not be given substantial or considerable weight."  (Doc. 6 at 4.)  In determining disability, the ALJ considers evidence from "acceptable medical sources," which include licensed physicians and licensed or certified psychologists.  20 C.F.R. § 416.913(a).  The ALJ can consider evidence not only from medical sources, but also "evidence from other sources to show the severity

of your impairment(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments." 20 C.F.R. § 416.913(d). These "other sources" can include school teachers, counselors, developmental center workers, and parents. *Id.* "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(d)(3). The weight given to opinions of non-examining sources "will depend on the degree to which they provide supporting explanations for their opinions." *Id.*

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the

specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

     1.    Treating Sources.

In determining that Claimant was not disabled, the ALJ considered the opinions of Claimant's examining psychologists and psychiatrists. Claimant was seen by Dr. Jon G. Rogers, Ph.D., on February 19, 2004, for a psychological evaluation. (Tr. at 21.) Dr. Rogers noted that he felt it quite likely Claimant had ADHD, although he had not been diagnosed by a mental health professional at that point. He further noted Claimant would benefit from counseling due to inappropriate sexual statements expressed by

Claimant. Dr. Rogers determined the following: Claimant's level of social functioning was average; social skill level a bit immature; attention, concentration, judgment, and range of emotional expression to be age appropriate; mild disinhibition; psychomotor skills good; problems were moderate to severe. *Id*.

Further, as noted by the ALJ, Claimant has been treated by Dr. Lelland C. Tolbert, a psychologist, since 2005. (Tr. at 19, 22.) On January 10, 2005, Dr. Tolbert diagnosed Claimant with ADHD, combined type, in addition to a parent-child relational problem. *Id*. at 22. He found Claimant to have academic problems as well as problems with his peer groups, but a global assessment of functioning ("GAF") of 60 (with a highest global assessment of functioning in 2005 of 65).[2] *Id*. During the 2005 evaluation, Dr. Tolbert recommended referral for medication follow-up and "weekly family therapy focused on parent training with behavior modification." *Id*. Ultimately, Claimant was diagnosed as having ADHD on February 2, April 13, and May 11,

---

[2]"A [GAF] of 51-60 is used to describe moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends). A [GAF] of 61-70 is used to describe some mild symptoms or some difficulty in social, occupational, or school functioning pretty well and having some meaningful interpersonal relationships." (Tr. at 22.)

2006. *Id.* Claimant visits with Dr. Tolbert were initially set once a week, but are now set once a month. *Id.* at 20, 120. Dr. Tolbert prescribed Metadate CD and Ritalin, which, according to Claimant's mother do not produce any side effects. *Id.* at 20. As of May 11, 2006, Dr. Tolbert reported that Claimant was doing well at home and at school, his grades were A's and B's, and he had no behavior problem. *Id.* at 121.

The ALJ further notes a psychiatric examination on September 26, 2006, by Cesar E. Munoz, M.D. who diagnosed Claimant with ADHD, average intelligence, history of asthma, moderate to severe psychological stressors, and a GAF of 65. (Tr. at 23.) Importantly, Dr. Munoz noted that, prior to treatment, Claimant was making D's and F's, but by the fourth grade, was making A's and B's. Dr. Munoz also noted that Claimant would need to continue medication and psychological treatment for several years or until he outgrows the ADHD. *Id.*

Claimant was examined several times at UAB University Hospital. On July 17, 2006, claimant was "euthymic" and displayed an appropriate, good attitude. (Tr. at 22.) On September 18, 2006, he was "doing good" in school, except in social studies, and Claimant's mother said he was "doing

better." *Id.* at 22-23. On November 25, 2006, Claimant was "appropriate and attentive," and he was helping around the house and doing his homework without being asked "most of the time." On January 10, 2007, claimant was "doing his school work, making better grades, and listening to his mother." *Id.*

There is nothing in the record to indicate that the ALJ did not give substantial weight to Claimant's treating physician. Based upon the medical records of evidence, "it appears that as long as [Claimant] follows the prescribed treatment, his impairments, when considered in combination, have improved to the point where they no longer impose any marked or imposed limitations in any domain," as found by the ALJ. (Tr. at 29.)

    2.    Other Sources.

Plaintiff further alleges the ALJ did not show cause why her testimony, as Claimant's mother, should not be given considerable weight. Claimant's mother testified that Claimant takes longer to do work, lacks focus, is not under control even though treatment has helped, he forgets what he is doing/does not finish work, tries to play with children but fights, and cannot keep friends. (Tr. at 20.) However, the ALJ specifically found the mother's

testimony to be "outweighed by the assessments of the claimant's teachers." (Tr. at 30.) In making this determination, the ALJ relied on questionnaires completed by Claimant's first, third, and fourth grade teachers. On January 23, 2004, Claimant's first grade teacher made the following determinations with regard to Claimant: no problem to only a slight problem in the domains of acquiring and using information and interacting and relating with others; no problem to only a slight problem in the domain of attending to and completing tasks, with the exception of an obvious, but not a serious, problem focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, completing class/homework assignments, and working without distracting himself or others; a slight problem in the domain of moving about and manipulating objects; no problem to only a slight problem in the domain of caring for himself, with the exception of an obvious, but not a serious, problem handling frustration appropriately; and no problem in the domain of health and physical well-being. *Id.* at 24-25. On March 8, 2007, Claimant's third grade teacher made the following determinations with respect to Claimant: no problem in the domains of acquiring and using information and moving

about and manipulating objects; "serious problems, without medications but as not having any problems with medications" in the domain of attending to and completing tasks; no problem to only a slight problem in the domain of interacting and relating with others, with the exception of a very serious problem expressing anger appropriately; slight to no problem in the domain of caring for himself, with the exception of a very serious problem handling frustration appropriately, but no problem being patient when necessary, and an obvious, but not a serious, problem in identifying and appropriately asserting emotional needs, and using appropriate coping skills to meet the daily demands of the school environment, as well as a serious problem responding appropriately to changes in his own mood; and, in the domain of health and physical well-being, Claimant "regularly takes prescribed medication for [ADHD], and that when he is on his medication, he is a good student, both academically and socially." *Id.* at 26-27. Finally, Claimant's fourth grade teacher completed the questionnaire on March 8, 2007, and determined that Claimant had no problems in any of the six domains. She also stated, "claimant takes prescribed medication on a regular basis and that he does not frequently miss school due to illness." *Id.* at 27. While

Claimant's mother claimed Claimant's ADHD is still uncontrolled, the ALJ found this to be specifically outweighed by the report of the fourth grade teacher, given she found no problem in any domain, and Claimant's grades improved to A's and B's. *Id*. at 28.

Based on the three questionnaires and the evidence of record, it is apparent the ALJ considered the testimony of Claimant's mother, and properly found that it was outweighed by the teachers assessments.

B.   Meeting a Listed Impairment.

Plaintiff alleges that Claimant's behavior problem is "of such severity that it equals the listing and that an expert at the hearing would have agreed" and the claim "should have been paid under Listing 112.11 for attention deficit hyperactivity disorder." (Doc. 6 at 4.)

A plaintiff is disabled if his impairments meet or equal an impairment in the Listings of Impairments. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet a listing, the plaintiff must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. §

404.1525(a)-(d)). "To equal a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (quoting 20 C.F.R. § 404.1526(a)). Furthermore, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria . . . [because] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987) (claimant must "present specific medical findings that meet various tests" to meet a Listing). Finally, the Court has an "absolute duty" to consider a combination of impairments in order to determine whether there is medical equivalency to a listing if the listing is defined in terms of functional criteria. *Davis v. Shalala*, 985 F.2d 528, 533-34 (11th Cir.1993).

Listing 20 C.F.R. pt. 404, subpt. P, app. 1, §112.11 provides as follows:

> Attention Deficit Hyperactivity Disorder:
> Manifested by developmentally inappropriate
> degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity for these disorders is

met when the requirements in both A and B are satisfied.

A.  Medically documented findings of all three of the following:

1.  Marked inattention; and

2.  Marked impulsiveness; and

3.  Marked hyperactivity;

AND

B. . . . for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.[3]

While Plaintiff alleges the ALJ substituted his own ideas for that of a psychiatrist in finding Claimant did not meet the listing (Doc. 6 at 4), that is not the case. As stated above[4], the ALJ considered the opinions of several psychiatrists and psychologists, in addition to the opinions of Claimant's teachers and mother, in coming to his conclusion. Nothing in

---

[3]Paragraph B2 of 112.02 requires "[m]arked impairment in age-appropriate cognitve/communicative function, . . . , or social functioning, . . . , or personal functioning," any of which must be "documented by medical findings (including consideration of historical and other information form parents or other individuals who have knowledge of the child, when such information is available) and including, if necessary, the results of appropriate standardized psychological tests . . . . ," or "[m]arked difficulties in maintaining concentration, persistence, or pace." Listing 20 C.F.R. pt. 404, subpt. P, app. 1, §112.02.

[4]*Supra* pp. 9-14.

the record as discussed above indicates that Claimant suffered from marked inattention, marked impulsiveness, and marked hyperactivity, as required by Listing 20 C.F.R. pt. 404, subpt. P, app. 1, §112.11, nor does Claimant meet any of the other criteria of the listing.  *See Wilson*, 284 F.3d 1224.

For these reasons, the Court is of the opinion that the ALJ's finding that  Plaintiff did not meet or equal 20 C.F.R. pt. 404,  subpt. P, app.  1, §112.11  is supported by substantial evidence from the record.  *See Wilson,* 284 F.3d at 1221.

C.   Failure to Develop the Record.

Plaintiff's final claim is that the ALJ did not fully develop the record in that he "erred in failing to seek a Consultative Exam which included an IQ section and in failing to have a Medical Examiner provide testimony at the hearing in the case." (Doc. 6 at 5.)  Further, Plaintiff alleges the ALJ "erred in failing to obtain pertinent medical records showing immunizations and regular child care visits to a medical provider." *Id.*

Administrative hearings under the Social Security Act are not

adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ has the duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). In any case, there must be a showing of prejudice in order to trigger remand for reconsideration; the record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413).

As stated above, the ALJ considered the opinions of psychologists, psychiatrists, Claimant's teachers, and Claimant's mother in concluding that Claimant was not under a disability. In doing so, the ALJ considered all evidence of record. There is no requirement that an IQ test be obtained. Furthermore, Plaintiff neglects to show how failure to obtain an IQ test or to obtain medical records showing immunizations and regular child care visits resulted in unfairness or prejudice. *See Smith*, 677 F.2d 830. Therefore, the ALJ properly developed the record.

IV.   Conclusion.

Upon close review of the administrative record, and considering all

of Plaintiff's arguments, the Court finds that the ALJ's decision is supported by substantial evidence. A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this <u>11th</u> day of <u>May 2009</u>.

```
_____
        L. SCOTT COOGLER
    UNITED STATES DISTRICT JUDGE
                                        153671
```